IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY NICOLE THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 20-01687 ) ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 1st day of March 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on July 21, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on June 18, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED and the matter is remanded to the Commissioner of Social Security ("Commissioner") for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **Background**

Plaintiff applied for supplemental security income ("SSI") on March 6, 2017. (R. 12).[1] When her SSI application was initially denied, she pursued her claim before an Administrative Law Judge ("ALJ") at a hearing on August 20, 2019. (*Id.*). The ALJ returned a not favorable decision wherein he found Plaintiff could maintain employment as a laundry worker, sorter, or addresser. (R. 22—23). The ALJ's decision became the final decision in this matter when the

---

[1] At that time Plaintiff also filed an application for child's insurance benefits. (R. 12). That application was denied (*id.*), but Plaintiff has not challenged the denial of that application before the Court. (Doc. No. 16, pg. 1 n.2).

Appeals Council refused to review it (R.1).  20 C.F.R. § 416.1481.  Plaintiff here challenges the ALJ's decision, arguing that it is unsupported by substantial evidence.  Her motion for summary judgment and Defendant's motion for summary judgment are before the Court.

## II.     Standard of Review

This Court's review of the agency's final decision is plenary as to legal questions but, as to findings of fact, the Court applies the substantial evidence standard.  42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence requires only such evidence as "a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Accordingly, where a reasonable mind would be satisfied by the ALJ's finding of fact, the Court will defer to it even if the Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

ALJs employ a five-step sequential evaluation to adjudicate applications for benefits under the Social Security Act ("Act").  20 C.F.R. § 416.920.  First, an ALJ ensures the claimant is not engaged in "substantial gainful activity."  *Id.* § 416.920(a)(4)(i).  Second, the ALJ identifies the claimant's severe medically determinable impairments of which the claimant must have at least one.  *Id.* § 416.920(a)(4)(ii).  At step three, the ALJ determines whether the claimant's impairment or a combination of impairments "meets or equals one of [the] listings in appendix 1" of Subpart P of the applicable regulations.  *Id.* § 416.920(a)(4)(iii).  A claimant who suffers from such an impairment (or combination of impairments) will be found disabled without further inquiry.  *Id.*  If the claimant does not suffer from a listed impairment or its equivalent, the ALJ decides at steps four and five whether the claimant can return to past work or adjust to other work.  *Id.* § 416.920(a)(4)(iv)—(v).  To determine whether a return to work or adjustment to

other work is possible, the ALJ first makes a finding of the claimant's "residual functional capacity" ("RFC").  *Id.*  A claimant's RFC is an articulation of his or her maximum work ability for full-time work activity.  SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  If a claimant's RFC does not permit a return to past relevant work and, further, the RFC and other vocational factors do not permit adjustment to other work, the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(iv)—(v).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff suffered from five severe medically determinable impairments: (1) unspecific neurodevelopmental disorder, (2) specific learning disorder, (3) bipolar II, (4) depression, and (5) anxiety.  (R. 14).  He considered whether her impairments or a combination of them met or equaled the criteria for any listed impairment, specifically, listings 12.04, 12.05, 12.06, and 12.11.  (R. 15—17).  He found Plaintiff did not meet the "paragraph B" criteria for listings 12.04, 12.06, and 12.11 because she had only moderate limitations in the four broad areas of functioning—"understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; [and] adapting or managing" oneself.  (R. 15—16).  Explaining his finding of only moderate limitations, the ALJ discussed how he weighed evidence in the record.  ***For understanding, remembering, or applying information***, the ALJ explained that while Plaintiff's intellectual testing was consistent with borderline to the extremely-low-range of average intellectual functioning and she "exhibited impaired attention and concentration," she could nonetheless do simple addition and demonstrated intact memory.  (R. 15).  Not only that, but her "daily functioning" included personal care, food preparation, laundry, shopping, reading, volunteering at a library, and babysitting her sister's children.  (R. 15—16).  ***For interacting with others***, the ALJ noted Plaintiff's history of anxiety in public, but

further noted her improvement as demonstrated by her volunteering one-to-two times per week at the library for up to an hour at a time, her relaxed demeanor during her consultative exam, and her increasing ability to, among other public activities, shop alone.  (R. 16).

*For concentrating, persisting, or maintaining pace*, the ALJ noted that Plaintiff had "exhibited impaired attention and concentration due to her limited intellectual functioning" on a test that used math problems as a gauge.  (*Id.*).  But he found it compelling that Plaintiff was able to maintain attention and concentration on the test despite working at an "exceedingly" slow pace.  (*Id.*).  He added that Plaintiff was able to keep a calendar and rarely missed treatment appointments.  (*Id.*).  *For adapting or managing oneself*, the ALJ emphasized that, though Plaintiff lived with her aunt, she dressed, bathed, and groomed herself; prepared food; did laundry; shopped; felt pride in being able to shop alone; volunteered at the library; and babysat her nieces and nephews.  (*Id.*).  The ALJ also remarked that Plaintiff's treatment was "conservative."  (*Id.*).  After finding Plaintiff did not demonstrate two marked or one extreme limitation in one of these four areas of functioning to meet the criteria for listings 12.04, 12.06, and 12.11, the ALJ further found she did not meet the criteria for listing 12.05.  (R. 17).  He explained that decision largely by reference to his aforementioned moderate-functioning-limitations findings.  (*Id.*).

Next, the ALJ formulated Plaintiff's RFC.  The ALJ found Plaintiff could work at all exertional levels but limited her to "[r]outine repetitive tasks at the SVP 1-2 level."  (*Id.*).  He added Plaintiff could only work in a "static, low stress environment" involving "only simple decisions, simple 1-2 step instructions, and infrequent changes and changes that did occur would be explained, written, and/or demonstrated and could be learned in 30 days or less."  (*Id.*).  He

further added that Plaintiff could not work any "fast-paced" jobs or jobs with "strict production or time quotas," nor could she tolerate more than "[o]ccasional interaction with others." (*Id.*).

Explaining how he arrived at that decision, the ALJ discussed his consideration of Plaintiff's allegations, her examination and treatment records, her daily functioning, and the medical opinion evidence of record. (R. 17—21). Though Plaintiff had alleged she was "unable to work due to mental deficits," the ALJ found her allegations were offset by other evidence, including evidence that she volunteered at a library which the ALJ saw as indicative of her improvement. (R. 18—19). Discussing Plaintiff's other daily activities, the ALJ dedicated considerable attention to Plaintiff's babysitting. (19—20). Citing Plaintiff's 2018 treatment notes, the ALJ found Plaintiff had a "regular routine of watching her nieces and nephew, at least for a period of time." (R. 19).[2] He acknowledged that the evidence did "not show whether [Plaintiff] was financially compensated for babysitting such that she engaged in substantial gainful activity," but found that such evidence did "suggest the claimant . . . engaged in a greater level of daily activity and a greater level of responsibility than she allege[d]." (R. 20).

The ALJ's consideration of Plaintiff's daily activities informed his assessment of the medical opinion evidence. Plaintiff's therapist, Ms. English, had opined serious limitations in "dealing with the public; dealing with work stress; functioning independently; maintaining

---

[2]  The treatment notes to which the ALJ referred were notes from January, May, and June of 2018. <u>January 10, 2018</u>: "Therapist and Ashley continued to explore ways to maintain boundaries in her relationship with her sister and watching her sister's children." (R. 847). <u>January 15, 2018</u>: "Ashley also shared some ongoing irritations that she has had with her sister regarding her sister coming home later than planned from work," and "processed some ways to . . . improve her ability to maintain personal boundaries regarding watching her sister's children (e.g. being able to say that she is busy at certain times)." (R. 845). <u>May 8, 2018</u>: "Therapist and Ashley explored the idea of creating specific behaviors and schedule to assist with her getting up and out of the house (she goes to her sisters during the week to help watch her niece and nephew)." (R. 839). <u>June 5, 2018</u>: "Complaint [sic] with meds but reports mood being up and down[,] watching nieces and nephew for her sisters." (R. 833).

attention and concentration; and understanding, remembering, and carrying out complex job instructions and simple job instructions." (R. 20). But the ALJ found these opinions were "not generally supported by the evidence" because despite Plaintiff's diminished intellectual functioning she could "care for her own needs, including with household chores and maintaining a schedule, as well as the ability to volunteer once or twice per week and babysit children." (R. 20). His assessment of one of the consultative examiner's ("CE") opinions—that Plaintiff was markedly restricted in being able to interact with the public—was similar in that the ALJ found the opinion to be "overstate[d]" because Plaintiff was "cooperative and friendly" at her examination and was able to "go out in public, including to stores, and to volunteer in a library." (R. 21). For the two other medical opinions in the record, one produced by another CE and the other by the State agency psychological consultant, the ALJ afforded those opinions significant weight and partial weight, respectively. (R. 21). Having articulated and explained Plaintiff's RFC, the ALJ identified three occupations that could offer 410,000 jobs nationally that would be available to Plaintiff and, accordingly, found her not disabled. (R. 22—23).

### IV.     Legal Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because he erred in his consideration of the medical opinion evidence. Specifically, Plaintiff argues the opinions offered by her therapist, Ms. English, and the CE who opined she was markedly limited in interacting with the public, Dr. Miller, show she is more limited than the ALJ's RFC finding reflects and, further, that their opinions carried her burden of proof in the disability determination. Plaintiff asserts that the error was harmful not only because an appropriately more limiting RFC might have led the ALJ to find no work was available to her, but also because the ALJ would have found she met the criteria for one of the listings at step three of the five-step

evaluation. Having considered Plaintiff's arguments, the Court finds the ALJ's explanation of his consideration of the daily functioning evidence is inadequate and, therefore, will order remand for further administrative proceedings.[3]

The substantial evidence standard is deferential, yet ALJs must adequately explain how they arrive at their findings and why they reject any relevant evidence in the process. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 700 (W.D. Pa. 2014) (citing *Burnett v. Comm'r of Soc. Sec..*, 220 F.3d 112, 122 (3d Cir. 2000)). And while an adequate explanation does not require discussion of "every piece of evidence in the record," it does demand that the ALJ "build an accurate and logical bridge between the evidence and the result." *Id.* at 698 (citations omitted). Where an ALJ has failed to provide the connection that shows how his consideration of the evidence led him to his findings, reviewing courts only magnify the error if they decide the decision is supported by substantial evidence. *See id.* (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (explaining that ALJs may not "reject evidence for no reason or the wrong reason" and that reviewing courts must assess "whether the reasons for [rejecting probative evidence] were improper").

Reviewing the ALJ's decision in this matter, the Court finds that some of the connections the ALJ drew between the evidence and his findings are too tenuous to support the decision. As indicated *supra* at Section III., the ALJ dedicated considerable discussion in the decision to Plaintiff's volunteering and babysitting activities. (R. 16, 18, 19, 20, 21). The ALJ's consideration of these activities impacted not only the listings determination, but also the ALJ's

---

[3] As the Court explains herein, remand in this matter is necessary because of the ALJ's insufficient explanation of his consideration of certain evidence alone, therefore, the Court will not address Plaintiff's other arguments for remand, *e.g.*, that the ALJ failed to appropriately consider the factors at 20 C.F.R. § 416.927(c) to evaluate the medical opinion evidence. Plaintiff will have the opportunity to pursue her other arguments on remand.

consideration of Plaintiff's testimony, treatment records, and the medical opinion evidence toward the RFC. (*Id.*).

Particularly where Plaintiff's volunteering and babysitting activities factored so significantly into the ALJ's decision, the Court is concerned that there is little discussion in the decision or evidence in the record that describes what responsibilities were inherent in those activities. Further, the information that is in the record about those activities does not obviously support the ALJ's RFC finding. For volunteering, Plaintiff testified that her therapist encouraged her to volunteer at the library and that, while there, she wrapped paperback books. (R. 52). Plaintiff's volunteering was limited—for the short time the library had volunteer positions available, she volunteered up to two times per week for up to an hour at a time. (R. 16). Because a claimant's RFC represents her "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," 1996 WL 374184, at *2, the ALJ should have explained how such limited volunteer activity—in both frequency and duration—undermined Plaintiff's allegations or supported the RFC finding.

There is even less information in the record about Plaintiff's babysitting activities. For instance, there is no indication as to how old Plaintiff's sister's children were at the time she watched them, whether they required active supervision, whether Plaintiff was expected to feed the children, or whether Plaintiff actually performed any other activities that are typically associated with childcare. Without more information about what Plaintiff's babysitting entailed, the Court does not follow how the ALJ found such evidence was indicative of "a greater level of responsibility than [Plaintiff] allege[d]." (R. 20). Where, as here, the ALJ's discussion does not bridge the gap between the evidence in the record and the findings in the decision, the Court is not in a position to decide whether the decision is supported by substantial evidence.

### V. Conclusion

Based on the foregoing, the Court finds it is necessary to remand this case for further consideration and explanation of the evidence of record, especially the daily functioning evidence. Accordingly, the Court remands this matter to the Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch  
United States District Judge

ecf:   Counsel of Record